UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Cupit*, 8:20cv97300 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

# ORDER

Plaintiff Guy Cupit has filed a Motion for Ruling on 3M Company's Waiver and/or Judicial Estoppel of Any Defense Regarding its Full Liability, *see* ECF No. 7, which 3M Company opposes, *see* ECF No. 8. Oral argument was heard on August 11, 2011. After careful consideration, Cupit's motion is denied without prejudice.

Cupit seeks a ruling that to the extent 3M's wholly owned subsidiaries—Aearo Technologies LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and 3M Occupational Safety LLC (collectively, "Aearo")—have any liability for the CAEv2 claims in this litigation, 3M has assumed that liability by virtue of its litigation conduct over the past three and a half years, through which 3M made clear that it bears independent and complete liability for all CAEv2-related injuries. In Cupit's view, 3M's course of conduct constitutes a waiver of any successor liability defense with respect to the CAEv2 claims in this litigation, and he asks that the

company be judicially estopped from asserting any variation of that defense in other forums.

In the context of this litigation, Cupit's arguments are not without merit and both philosophical and equitable appeal. Nearly three and a half years ago, the Judicial Panel on Multidistrict Litigation consolidated and transferred the 3M Combat Arms Earplug Products Liability Litigation to this Court, and more specifically to the undersigned, for coordinated pretrial proceedings of all CAEv2 hearing-related claims against 3M Company and its Aearo subsidiaries.[1] *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 366 F. Supp. 3d 1368 (J.P.M.L. 2019); *see also* 28 U.S.C. § 1407. Since that time, this Court has overseen an exhaustive discovery process, involving common corporate, military and expert discovery for the nearly 300,000 cases in the MDL, as well as case-specific discovery for 19 bellwether plaintiffs. More recently, the Court instituted a procedure in which waves of individual cases (500 at a time) are proceeding with plaintiff-specific discovery and complete pretrial work up, including resolution of *Daubert* and dispositive motions by this Court, following which, the remaining Wave cases will be remanded to their respective transferor courts for trial.

---

[1] There are six named defendants in the MDL: 3M Company, 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC. Five of the six defendants—all but 3M Company—recently filed for Chapter 11 bankruptcy in the Southern District of Indiana.

Significantly, at no point since the beginning of the MDL—over the years of intensive discovery, motions practice, and bellwether trials—did 3M Company ever hint, much less represent, that any entity other than itself was responsible for the CAEv2 claims in this litigation. Quite the contrary, 3M Company comported itself as the sole entity (besides the federal government or individual plaintiffs, of course) directly and independently responsible for the plaintiffs' claims.

From the start, Aearo was a party to this litigation in name only. Examples abound. As early as the Master Answer, the defendants jointly asserted an array of defenses aimed at shifting liability either to the United States military,[2] or to the plaintiffs themselves,[3] but *never to Aearo.* During discovery, 3M Company alone verified the responses to interrogatories sent to all defendants. Not Aearo. 3M Company produced virtually all of the discovery materials. Not Aearo. 3M Company sent 30(b)(6) witnesses to testify at depositions. Not Aearo. At the initial multi-day Rule 26 conference, 22 subsequent case management conferences, countless biweekly discovery and leadership calls, Pentagon and Department of Justice meetings, a myriad of hearings and oral arguments on various matters, and in every formal and informal communication with the Court, the six defendants

---

[2] *See In re 3M*, 3:19md2885, Master Answer, ECF No. 959 at 99–100 ¶¶ 18-19.
[3] *See id*. at 94-95 ¶¶ 4-7.

maintained an unqualifiedly united front, with 3M Company—not Aearo—at the helm.

Even in the 16 bellwether trials, 3M Company maintained its posture of singularity and control. After the Court required the presence of a corporate representative at the bellwether trials, only 3M Company sent a representative. Not Aearo. When bellwether juries were instructed that 3M and Aearo would be "refer[red] to collectively as '3M'" for purposes of liability and damages, 3M did not object. *See, e.g.*, *Blum v. 3M Co.*, 7:20cv122, ECF No. 114 at 13. Regarding the apportionment of fault defense, those same bellwether juries could apportion fault only to a single defendant, 3M Company, and the company never once argued that the relative fault of any other defendant should be considered in connection with the plaintiffs' injuries, even in cases involving CAEv2 use that occurred solely *before* 3M Company acquired Aearo. *See, e.g., Adkins v. 3M Co.*, 7:20cv012, Verdict Form, ECF No. 118 at 4. Just as in discovery, the six defendants presented a united front at each bellwether trial with 3M calling all the shots, never once asserting crossclaims against other "separate" defendants for indemnification, presenting evidence that would have permitted a jury to allocate fault differently to any of the defendants, or asking for jury instructions or a verdict form that would enable juries to apportion fault among the six defendants. If the Aearo subsidiaries were, in fact, responsible parties in this litigation, and thus should have been subject

to independent liability determinations during the bellwether trials, it was a costly error to omit any such argument until now. The bellwether trials ended with 10 out of 16 juries (13 out of 19 verdicts) finding that the defendants—again, collectively treated as "3M"— are liable for a total unreduced amount of nearly $300 million in compensatory and punitive damages.

If that was not enough, the defendants themselves have explicitly disavowed the notion that Aearo has a meaningful role or identity in this litigation. In post-trial briefing on statutory cap issues in the Wayman and Vaughn cases, the defendants stood firm that "3M Company owns and controls 100% of the other five named defendants, rendering any suggestion that they are six separate parties for purposes of *this litigation* illusory." *See Vaughn v. 3M*, 7:20cv134, ECF No. 179 at 10; *Wayman v. 3M*, 7:20cv149, ECF No. 194 at 4. This was the dispositive issue under the applicable law, which imposed noneconomic damages caps on a per defendant basis. *See* Colo. Rev. Stat. § 13-21-102.5(3)(a),(c); *Gen. Elec. Co. v. Niemet*, 866 P.2d 1361, 1366 (Colo. 1994). For the Wayman and Vaughn cases, this meant the difference between a nearly $1 million damages cap based on a single defendant, 3M Company, and a $6 million cap based on six defendants. Of note, the defendants argued that the two plaintiffs should not be permitted to receive six times the statutory cap for a single defendant after making the wholly inconsistent "strategic decision" to pursue the six defendants collectively as "3M" at trial and for the

entirety of the litigation. The Court agreed, and relying on the defendants' argument, applied the nearly $1 million statutory cap for a single defendant, which in turn significantly reduced the two plaintiffs' damages awards—to the defendants' financial benefit. *See Wayman*, 7:20cv149, ECF No. 198; *Vaughn*, 7:20cv134, ECF No. 181.

Now, against this backdrop and displeased with the rulings of this Court and the bellwether jury verdicts, the defendants are attempting to evade the 3M primacy narrative but only—and *admittedly*—because it no longer fits the companies' strategic objectives. A short time ago (mere weeks, according to Aearo's bankruptcy filings), 3M and Aearo devised a scheme to escape the MDL and this Court for good. *See In re Aearo Techs. LLC*, Case No. 1:22bk2890, Informational Brief, ECF No. 12 at 5, 14 (casting the MDL as a "failure" and the bellwether verdicts as "outsized and untethered to reality"). The plan was for Aearo to file for Chapter 11 bankruptcy protection, and then seek an extension of the statutory automatic stay to 3M Company, who would remain completely solvent and never file a bankruptcy petition itself. *See id.*, ECF Nos. 1, 10. To pull this off, the entities executed a funding and indemnity agreement—on the eve of Aearo's bankruptcy filing—allocating 100% of 3M's liability for the CAEv2 claims in this litigation to Aearo. *See id.*, ECF No. 11-2. By voluntarily assuming all of the liability for the largest MDL in the federal judiciary's history, Aearo obviously wound up in dire financial

Case 8:20-cv-97300-MCR-GRJ   Document 9   Filed 08/14/22   Page 7 of 10

Page 7 of 10

distress. 3M Company, for its part, would save the day by funding Aearo's operations and capital needs during the bankruptcy proceedings, as well as the subsequent claims trust, but desires the same protection afforded the Aearo debtors under the bankruptcy stay.[4] Thus, for bankruptcy purposes, the defendants need Aearo to be viewed as "the real-party defendant" when it comes to the CAEv2 liability in this litigation, and the parties' funding and indemnity agreement to be viewed as validly creating an identity of interest between the depletion of Aearo's assets in bankruptcy and continued litigation against 3M Company in the MDL. *See id.*, ECF No. 10 at 14.

Although the naked duplicity inherent in this newly concocted narrative pervades the bankruptcy record, the problem for Cupit's motion is that 3M Company itself has not yet asserted (or attempted to assert) any defense that it is the "wrong party" *in this litigation*. *See* Cupit Motion, ECF No. 7 at 2. The United States Constitution limits federal court's jurisdiction to only present "cases" and "controversies." U.S. Const. art. III, §2. Implicit within this constitutional limitation is that federal courts must only decide issues that are ripe for judicial review. *See*

---

[4] The way the Court reads the funding and indemnity agreement, if the automatic stay is not extended to 3M, the agreement will still exist, which arguably means 3M will have to pursue Aearo as a creditor in bankruptcy for future CAEv2 judgments coming out of federal or state courts, essentially pitting them against the 230,000+ soldiers who are also creditors. As for the claims trust, 3M states that it is "uncapped" and that 3M is "committed to" funding it beyond the $1 billion, *see In re Aearo Techs. LLC*, Case No. 1:22bk2890, ECF No. 11 at 6, but the Court finds nothing in the record (including in the funding and indemnity agreement) that legally requires 3M to fund the trust beyond that amount.

*Elend v. Basham*, 471 F.3d 1199, 1204–1205 (11th Cir. 2006). Beyond the constitutional limitation, the ripeness doctrine embodies "prudential considerations" that require judicial restraint when parties seek review of "potential or abstract disputes." *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). Significantly, courts must strictly apply the ripeness doctrine so as to avoid "rendering impermissible advisory opinions[.]" *See Nat'l Advert. Co. v. City of Miami, Fla.*, 402 F.3d 1335, 1339 (11th Cir. 2005).

Here, the Court is deeply concerned over 3M Company's sudden, bankruptcy-eve about-face regarding the entity responsible for the CAEv2 claims in this litigation. And the Court agrees that 3M Company's new narrative bears the hallmark characteristics of a successor liability defense. *See, e.g., In re Acme Sec., Inc.*, 484 B.R. 475, 487 (Bankr. N.D. Ga. 2012) (discussing essential elements for imposition of successor liability under Georgia law). However, the fact remains that Aearo's successor liability is currently only a potential defense that 3M Company has never raised in Cupit's case or any other individual case in this MDL; Aearo's new liability is on the record only in the bankruptcy court. Consequently, a ruling on whether the successor liability defense has been waived would be a premature and advisory decision on an abstract controversy, which is prohibited by well-established constitutional jurisprudence.

Cupit's judicial estoppel argument falls short for similar reasons. "Judicial estoppel is an equitable concept invoked at a court's discretion" and is "designed to prevent the perversion of the judicial process." *Parker v. Wendy's Intern., Inc.*, 365 F.3d 1268, 1271 (11th Cir. 2004) (internal quotations and citations omitted). Generally, judicial estoppel applies when a party plays fast and loose with the judicial process by asserting inconsistent legal positions to gain an improper advantage. *See New Hampshire v. Maine*, 532 U.S. 742, 749–750 (2001). Factors relevant to the judicial estoppel analysis include the party's later position is "clearly inconsistent" with its earlier position, "whether the party has succeeded in persuading a court to accept that party's earlier position," and "whether the party seeking to assert an inconsistent position would derive an unfair advantage. . . if not estopped." *Id*. at 750–51 (citations omitted).

Here, 3M Company's statements and course of conduct since the start of the MDL are premised on two truths—that 3M Company is directly and independently responsible for the CAEv2 liability in this litigation and that its subsidiaries are parties in name only. With that said, and as discussed above, 3M Company has not yet asserted a successor liability defense in this MDL or otherwise formally taken a legal position *before this Court* that is inconsistent with its prior position. And conveniently for 3M Company, it has not yet, itself, taken any legal positions in the bankruptcy proceedings, only the Aearo subsidiaries have spoken there. To the

extent that Aearo has made inconsistent assertions in the bankruptcy proceedings that flagrantly and widely diverge from its positions in the MDL, the bankruptcy court is amply well-suited to determine whether Aearo should be judicially estopped from improperly pursuing that course in those proceedings.

Based on the foregoing, Cupit's Motion for Judgment on Waiver and Collateral Estoppel, ECF No. 3361, is **DENIED** without prejudice to refile if, and when, 3M Company asserts a successor liability defense in this matter.

**DONE AND ORDERED,** this 14th day of August 2022.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**